*In re* ESTATE OF CLINTON M. LYONS, SR., Deceased.—(CLINTON M. LYONS, JR., Ex'r of the Estate of Clinton M. Lyons, Sr., Petitioner-Appellant, *v.* PHYLLIS J. EDKINS *et al.*, Respondents-Appellees.)

Second District    No. 80-181

Opinion filed August 4, 1981.

Edward F. Diedrich and Jerome C. Shapiro, both of De Kalb, for appellant.

Norman H. Racine, of Racine and Racine, of Sycamore, for appellees.

Mr. JUSTICE HOPF delivered the opinion of the court:

This is an appeal from an order of apportionment of the Federal estate taxes of the estate of Clinton M. Lyons, Sr. The executor of the estate and one of its beneficiaries, Clinton M. Lyons, Jr., petitioned the court for apportionment and contribution. His three sisters, who were the other beneficiaries, counterclaimed for relief that would equitably allocate the value of certain assets of the estate using a formula different than that proposed by the executor. The trial court's granting of the relief prayed for by the sisters resulted in a higher estate tax liability for the executor and this appeal.

The question raised on appeal is whether or not the trial court properly valued the land assets of the estate for purposes of apportionment of the estate tax burden. The executor's first argument urges that the

only valuation that should be used for Federal estate tax purposes is that valuation listed in the Federal estate tax return. Secondly, he urges that even if there were other legal valuations that could be used, there was no competent evidence given at trial that the value of the land was other than that listed in the Federal estate tax return. Finally, he contends that the court erred in not directing contributions to the executor of the proportionate sums due upon apportionment of the Federal estate taxes.

Clinton M. Lyons, Sr., died testate leaving four children: three daughters and a son. There is no dispute as to the value of the estate as a whole or that $45,033.42 is owed as Federal estate taxes. The question is how to apportion such taxes among the beneficiaries.

Decedent's probate estate consisted of approximately 12 acres of land and some minor items. The remainder of the assets were placed in trust and consisted of approximately 410 acres of land. All the land is located in De Kalb County. The daughters of Clinton M. Lyons, Sr., received 103.3 acres from the estate in trust plus a small parcel acre through the probate estate. The executor received the balance from the trust, or approximately 307 acres plus some small acreage from the probate estate. The land received by the executor was largely tillable farm land, while that received by the daughters was largely wooded land. At the executor's request, an appraiser from the estate and gift tax section of the Internal Revenue Service valued some of the land involved at $600 an acre and other at $652 an acre. This was for the purpose of valuing the whole estate and did not reflect any apportionment among the parties. The beneficiaries received some land valued at $600 per acre and some valued at $652 per acre.

After a trial, the court ruled that the tillable land was worth 2½ times what the wooded and nontillable land was worth. Therefore, the daughters' estate tax liability was apportioned by the value of the land they owned rather than the percentage of the farm acreage they owned. The trial court also ruled that the daughters could pay the Internal Revenue Service directly and need not pay the executor.

Generally, apportionment of Federal estate tax burdens is a question for the States to resolve. The two areas where Federal law controls, life insurance proceeds and property over which a decedent had a taxable power of appointment (Internal Revenue Code of 1954 §§ 2206, 2207) are not in issue here. In *Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109, the Supreme Court left the apportionment of the ultimate impact of Federal estate taxes for the State legislatures or courts to decide. Illinois has no pertinent statutes governing this area.

The executor's first argument proposes that the burden of the estate tax and expenses should be divided among the interested persons in proportion to the value of each person's share of the estate. He

characterizes this as the equitable contribution approach. He urges that his three sisters are proposing a different rule, the burden on the residue rule which would put the burden entirely on the residuary estate. Actually, there is no controversy as to this point and the parties all recognize that the equitable contribution rule is controlling in Illinois. The question is really one of valuation.

■■ At trial, the executor relied on testimony from the appraisal witness for the Internal Revenue Service who valued some land at $50 an acre more than other land. This witness, however, did not testify as to the value of the actual parcels received by either the executor or the three sisters. On the other hand, the two appraisal witnesses for the daughters testified that the acreage received by the executor, the tillable farm land, was worth two to three times the wooded acreage received by the daughters.

Both parties cite the same cases in support of their respective positions. It is well settled in Illinois that payment of Federal estate taxes should be equitably apportioned among the beneficiaries. This includes surviving tenants of property held in joint tenancy. (*Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662.) In *Roe*, the court found that nonprobate assets generated the estate tax, and so to deny apportionment would inequitably favor the recipient of nonprobate assets. *In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 396 N.E.2d 82, expanded *Roe* to apply the doctrine of equitable apportionment to testate as well as intestate estates.

Similarly, in the case of *In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 1026, 313 N.E.2d 228, the court stated:

> "impelling justice and fairness dictate, and equity provides, that the recipients of those assets contribute in paying the federal estate tax proportionately to the amount of tax their share generated."

While the court in *Van Duser* was referring to the inclusion of probate and nonprobate assets to determine Federal tax liability, we feel that this language is equally applicable to the case before us.

Clearly the doctrine of equitable apportionment is applicable here. The only two possible obstacles to the application of this doctrine would be a statement of legislative intent to the contrary or a situation where a contrary intention is expressed by the decedent in a will. No such statute exists, nor did decedent make any reference to apportionment. *Cf. In re Estate of Grant* (1981), 83 Ill. 2d 379, 415 N.E.2d 416.

■■ The executor urges that the only manner in which the estate tax burden can be apportioned is by the appraisal made to value the estate as a whole. We disagree.

In the situation presented here, where the executor has an appraisal made that does not reasonably represent the actual value of the shares

received by the beneficiaries, contribution to the Federal estate tax burden need not be based on the appraisal made to value the estate as a whole for the Internal Revenue Service. Because the $600 or $650 value per acre figure did not represent the value of the farmland actually received by the daughters, the trial court properly allowed testimony that went to proof of the value of the shares actually received by the beneficiaries.

If the land received by the son was worth 2½ times that received by the daughters, as was found by the trial court here, then his Federal estate tax burden should reflect the greater value that he received.

The executor's second argument is that even if other valuations are allowed, there was no competent evidence that the value of the land was other than that listed in the Federal estate tax return.

The first appraiser who testified for the daughters at the trial in 1979 had attempted to sell portions of one of the farms in 1969 and in 1970. He had visited the property six or seven times after 1974, and he further testified to comparable sales of farm property in the area. The second appraiser who testified for the daughters had made three visits to the farm before 1974 and four visits after 1974 and based his opinion on comparable sales of farm land in De Kalb County.

The executor contends this testimony was irrelevant and immaterial because it did not tend to establish a fact in controversy under the case of *McLaughlin v. Rush-Presbyterian St. Lukes Medical Center* (1979), 68 Ill. App. 3d 546, 386 N.E.2d 334, 338. We disagree. Evidence of the value of the property being taxed is clearly relevant to how the tax burden should be apportioned.

The executor urges that the visits to the property and the comparable sales testified to by the witnesses were too remote in time from the date of death to be relevant. However, the question of whether evidence of a comparable sale is too remote in time is a determination largely within the discretion of the trial judge. *City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 154 N.E.2d 242; *Forest Preserve District v. Kean* (1921), 298 Ill. 37, 131 N.E. 117.

The executor further urges that the only relevant evidence of the value of the land was the handwritten notes of the Internal Revenue Service agent who had made an appraisal. Although we have addressed this issue above, we do note here that the estate tax return appraisal was not made for purposes of apportionment. Further, it was made at the request of the executor, who stands to gain personally from the use of this appraisal for apportionment purposes.

■■ Because we have held that the equitable apportionment doctrine requires that recipients of estate assets contribute in paying the Federal estate tax proportionately to the amount of tax their share generated, the

testimony from the appraisers was relevant and material to the apportionment proceedings in order to determine the value of the shares. With regard to the competency of the testimony, there was no objection at trial to the qualifications of the appraisers who testified.

The third and final argument raised by the executor is that the trial court erred in not directing contribution to the executor of the proportionate sum due upon apportionment of the Federal estate taxes. The trial court's order directed that the sisters pay their tax directly to the Internal Revenue Service. The executor states that the duty to pay the tax is on the executor (Internal Revenue Code of 1954 §2002). He contends that if he fails to pay the tax he may be personally liable. While this may be true, we note that any one of the beneficiaries who fails to pay could be personally liable (Internal Revenue Code of 1954 §§6321, 6324(a)(1)). As such, the trial court made no error in this regard, and the sisters can pay the Internal Revenue Service directly.

For the reasons stated, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.